### WRIGHT *v*. WEBB.

### WEBB *v*. MONTGOMERY.

## Opinion delivered December 7, 1925.

1. TRUSTS—FRAUD.—Evidence *held* not to show that the trustees of a common-law trust violated any legal duty to those interested in the trust estate or committed fraud or misappropriated any funds of the estate in selling their personal interests to others and resigning from the trusteeship.

2. ATTORNEY AND CLIENT—RIGHT TO FEE.—Evidence *held* to support a finding that an attorney suing for fees performed substantial services on behalf of his clients, and that his acting as attorney for the clients' opponent in another suit did not bar recovery.

Appeal from Lafayette Chancery Court; *J. Y. Stevens*, Chancellor; affirmed.

*R. L. Montgomery* and *John W. Pope,* for appellant.

*Charles M. Cocke* and *King & Whatley,* for appellee.

McCULLOCH, C. J. On January 2, 1919, W. M. Webb, one of the appellees, and A. A. Cocke created a common law trust by proper declarations in writing, duly acknowledged and placed of record, for the purpose of operating, under the name of United Home Builders of America, the business of selling interest-bearing contracts and lending money to holders of contracts at a low rate of interest for the purpose of building homes. The place of business of the concern was at the city of Dallas, Texas. The declaration, which was the foundation of the trust, provided for issuing contract certificates,

which were to be paid for in installments, and lending money to contract holders, and the two parties mentioned above, W. M. Webb and A. A. Cocke, were each declared to be a trustee until he should die or resign. One of the stipulations in the trust was that, after every contract had been called in by the trustees ''and every obligation has been met and fully satisfied, there being no outstanding obligations against the United Home Builders of America, then the trustees shall have any balance left in the reserve fund as further reward or compensation for faithfully and honestly carrying out the trust committed to them.'' Authority was conferred upon the contract holders to appoint or approve new trustees upon the death or resignation of both of the trustees mentioned in the declaration. Full power and authority is conferred upon the trustees with reference to the management of the business.

The business of the concern was put into operation by the trustees, and the funds handled in the progress of the affairs reached the sum of more than $1,500,000.

Webb and Cocke served together as co-trustees until December 2, 1921, when Cocke resigned and sold his interest in the concern to William Sacks, who served with Webb as trustee from then until November 17, 1922, when they (Webb and Sacks) sold their interests in the concern to the Hawkins Mortgage Company, a corporation doing business at Indianapolis, Indiana. Webb and Sacks then resigned as trustees, and M. F. Hawkins and A. A. Schieb, who were president and vice-president, respectively, of the Hawkins Mortgage Company, shortly thereafter became the trustees in succession to Webb and Sacks. The terms of the sale by Webb and Sacks to the Hawkins Mortgage Company were expressed in writing in the form of a proposal from the purchasers, which was accepted by Webb and Sacks. The writing provided that Webb and Sacks should, in consideration of the sum of $150,000 paid to each, sell to the Hawkins Mortgage Company all of their ''right, title and interest of every kind whatsoever in and to the capital stock,

issued and unissued, owned by the two trustees, namely, Sacks and Webb, and every other interest of whatsoever kind, excepting contracts personally owned, including whatever is left to the trustees after liquidation." The contract provided that the purchase price due to Webb should be paid by the assignment of certain Arkansas mortgages in the aggregate sum of $76,000 and a note of the purchaser for $65,000, due in four years. After this transfer was consummated, Hawkins and Schieb were named as trustees at a meeting of the contract holders, but at that time there was pending in the district court at Dallas a proceeding by certain holders of contracts for the appointment of a receiver, and subsequently the appellant, G. G. Wright, was appointed as such receiver.

On October 30, 1920, the Mississippi Valley Land & Livestock Company, being the owner of a tract of farm land containing 1920 acres in Lafayette County, Arkansas, executed to the Indiana Life Insurance Company of Indianapolis a mortgage on said lands to secure an indebtedness of $76,000, evidenced by three negotiable promissory notes. The Indiana Life Insurance Company assigned those notes before maturity to the Hawkins Mortgage Company, and the latter assigned the same to W. M. Webb as part of the purchase price of his interest in the business of the United Home Builders of America as stipulated in the contract of purchase. Webb subsequently assigned the notes to his wife, Laura A. Webb, and the two joined in this action in the chancery court of Lafayette County to foreclose the mortgage. This was after the appointment of the receiver at Dallas; and he intervened for the purpose of asserting ownership in behalf of the United Home Builders of America of the notes in suit. He alleged in substance that appellee Webb, acting in collusion with Hawkins and Sacks, had fraudulently misappropriated the funds of the United Home Builders of America, had sold the business and property of the concern and converted the proceeds of the sale to their own use, and that the trans-

fer of the notes from the Hawkins Mortgage Company to Webb was paid for by the sale of the property of the United Home Builders of America in violation of the trust. He also alleged that Mrs. 'Webb accepted the notes with knowledge of the fact that they had been derived by her husband through a misappropriation of the funds of the trust estate.

Appellees answered denying all the charges of fraud and misappropriation of funds; denied that Webb and Sacks had sold the business of the United Home Builders of America or misappropriated any of its funds, and alleged, on the contrary, that they had merely sold their interests in the business and capital stock, and their right to share in the remainder after final liquidation in accordance with the terms of the declaration of trust, and that they had resigned as trustees, and were succeeded by Hawkins and Schieb.

The appellees first employed R. L. Montgomery, an attorney at law at Lewisville, the county seat of Lafayette County, to institute the foreclosure proceeding, and agreed to pay him a fee of $1,000. After a time they discharged him and employed other attorneys. Montgomery then sued appellees for his fee, and the two cases were consolidated and tried together, resulting in a decree dismissing the intervention of appellant for want of equity, and a decree in favor of Montgomery against appellees, the Webbs, for the recovery of the full amount of his fee. Each of the unsuccessful parties in the two controversies has appealed.

Learned counsel for appellant has discussed with much learning and zeal the principles of law bearing upon the controversy and the authorities in support thereof. There seems, however, to be no controversy with reference to the law applicable to the case. The sole controversy relates to the facts established by the evidence, or rather to the effect of the testimony.

It is contended on behalf of appellant that the evidence establishes the charge that Webb and Sacks violated the trust by selling out the property and business

of the United Home Builders of Amercia and appropriating the funds to their own use, and that the notes in suit were received by Webb from the Hawkins Mortgage Company in consideration of the sale of the trust estate. We are of the opinion, however, that the evidence does not establish the charge made by appellant. The contract between Webb and Sacks and the Hawkins Mortgage Company is in writing, and speaks for itself. It shows that the trustees, Sacks and Webb, were not selling the trust estate, but were merely selling their interest therein, and their right to receive whatever might remain after the termination of the trust. The trustees were clothed with great power and authority in the management of the trust estate, and it was a valuable position they occupied for the reason that they could fix their own salaries, and could hold the position for life. It is clear from the evidence that all that they did was to sell their interest and agree to resign as trustees so that Hawkins and Schieb could be elected as trustees in succession. Whatever may be said as to the propriety or impropriety on the part of these trustees in thus trading upon the position of trust which they occupied, they did no violence to the legal duty which they owed to those interested in the trust estate in selling their interest, and in resigning from the trusteeship. They were given the right under the terms of the declaration to resign at will, and, whatever their motives may have been, they had the legal right to exercise that option, and in resigning the trust they inflicted no wrong nor violated any legal duty which they owed to the *cestui que trust*. The proof fails to show fraud on the part of the trustees or any misappropriation of funds. The mortgage notes in suit were never owned by the United Home Builders of America, and were never in the hands of trustees as the property of that concern, and none of the funds or other assets of the trust estate were used in the purchase of these notes. Under this state of facts we are unable to discover any principle of equity which would compel the trustees to account to the trust estate for this prop-

erty, which had been received as a part of the consideration of the sale of the personal interests of the trustees.

We make no comment upon the character of the business of the United Home Builders of America—its providence or improvidence—as outlined in the declaration of trust. We are not called on to express any opinion on that subject, as none of the contract holders are complaining here or seeking for an accounting by the trustees, further than the effort of the receiver to claim the notes in suit as a part of the trust estate on the ground that they were purchased with property of the estate. We are of the opinion that the appellant has not made out his case, so as to entitle the receiver to recover the notes in suit or the proceeds thereof.

The controversy between Montgomery and the Webbs is entirely separate from the other controversy, but, as the cases were consolidated below and briefed together here, we dispose of them in one opinion.

The Webbs pleaded below that they had rightfully discharged Montgomery as their attorney on account of his failure of duty to them in making misrepresentations as to his relationship with the officers of the Mississippi Valley Land & Livestock Company, and in making a false indorsement on the back of some of the notes showing that the indorsement to Webb was without recourse, and negligently failing to institute the action to foreclose the mortgage in due time. These questions were all tried in the chancery court, and the evidence completely refuted the charge against Montgomery of neglect of duty and failure to perform the task according to the terms of his employment. It is not true, according to the evidence, that Montgomery had misrepresented his professional relationship with the officers of the Mississippi Valley Land & Livestock Company or that he had neglected his duty with respect to bringing the suit, or that he had made the alleged assignment on the back of the note, restricting the liability of the indorser. The evidence supports the finding of the chancery court that he performed substantial service in handling the business

for appellees, and was entitled to compensation according to the terms of the contract. After his discharge by appellees, Montgomery accepted employment by appellant Wright, in the litigation with the Webbs. It must be borne in mind that that controversy is entirely separate from the foreclosure suit against the Mississippi Valley Land & Livestock Company. In fact, there was no controversy about the foreclosure of the mortgage, and that was the proceeding in which Montgomery was to earn his fee. He performed all of the duties he was called upon to do with respect to that proceeding. If he had accepted employment by the adversary of appellees in that proceeding, it might well be said that he had acquiesced in his discharge, and could recover no fee, but this is not the state of the case, for the controversy in which Montgomery represents appellant is not the one in which he was employed by appellees.

We are of the opinion that each of the decrees was correct, and the same are in all things affirmed.

WOOD and HUMPHREYS, J.J., dissent only as to Wright v. Webb.